UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL TOBIN, | : |
| Plaintiff, | : |
| | : CIVIL ACTION NO. |
| v. | : |
| CHICHESTER SCHOOL DISTRICT; CHICHESTER SCHOOL BOARD OF DIRECTORS; FRED SERINO (individually); DANIEL NERELLI (individually); ANTHONY TESTA (individually); JAMES STEWART (individually); MICHAEL CIVERA (individually), | : PLAINTIFF REQUESTS TRIAL BY JURY |
| Defendants. | : |

**COMPLAINT**

Plaintiff, Paul Tobin, by and through undersigned counsel hereby files this Civil Action Complaint against Defendants, Chichester School District, Chichester School Board Of Directors, Fred Serino (individually), Daniel Nerelli (individually), Anthony Testa (individually), James Stewart (individually), Michael Civera (individually) (collectively "Defendants") and upon information and belief avers the following:

**PARTIES**

1. Plaintiff, Paul Tobin ("Plaintiff") is an adult individual who resides in the Commonwealth of Pennsylvania at 1010 Mulberry Street, Brookhaven, PA 19015.

2. Defendant, CHICHESTER SCHOOL DISTRICT and CHICHESTER SCHOOL BOARD OF DIRECTORS (hereinafter referred to collectively as "Defendant CHICHESTER") is an academic entity under the laws of the Commonwealth of Pennsylvania, with its headquarters located at 401 Cherry Tree Road, Aston, PA, 19014.

3. At all times material, Defendant DANIEL NERELLI (hereinafter referred to as "Defendant NERELLI") was and upon information and belief remains an employee of Defendant as Superintendent.

4. At all times material, Defendant NERELLI has held supervisory authority over Plaintiff.

5. At all times material, Defendant ANTHONY TESTA (hereinafter referred to as "Defendant TESTA") was and upon information and belief remains an employee of Defendant as Business Administrator.

6. At all times material, Defendant TESTA has held supervisory authority over Plaintiff.

7. At all times material, Defendant JAMES STEWART (hereinafter referred to as "Defendant STEWART") was and upon information and belief remains an employee of Defendant as President (Chichester Administrators Association).

8. At all times material, Defendant STEWART has held supervisory authority over Plaintiff.

9. At all times material, Defendant FRED SERINO (hereinafter referred to as "Defendant SERINO") was and upon information and belief remains an employee of Defendant as the Assistant to the Superintendent for Human Resources.

10. At all times material, Defendant SERINO has held supervisory authority over Plaintiff.

11. At all times material, Defendant MICHAEL CIVERA (hereinafter referred to as "Defendant CIVERA") was and upon information and belief remains an employee of Defendant as the Director of Facilities.

12. At all times material, Defendant CIVERA has held supervisory authority over Plaintiff.

13. At all times material, Defendants were the joint employers of PLAINTIFF.

## NATURE OF THE CASE

14. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"); the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 et seq. ("FMLA"); the American with Disabilities Act of 1990, 42 U.S.C. § 12101 *et. seq* ("ADA"); the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, *et. seq.* ("PHRA"); under the laws of the Commonwealth of Pennsylvania, and seeks damages to redress injuries Plaintiff suffered as a result of discrimination and retaliation which ultimately led to Plaintiff's unlawful termination by his employer.

## JURISDICTION AND VENUE

15. This action involves a Question of Federal Law under Title VII of the Civil Rights Act of 1964, the Family Medical Leave Act, and the Americans with Disabilities Act.

16. The honorable Court has supplemental jurisdiction over the Commonwealth law Causes of Action.

17. Venue is proper in the Eastern District of Pennsylvania as Plaintiff was employed by Defendants and worked in Delaware County where the discrimination complained of occurred.

18. On or about November 25, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants as set forth herein. Plaintiff's Charge of Discrimination was dual filed with the Pennsylvania Human Relations Commission and the Philadelphia Commission on Human Relations.

19. On or about March 19, 2021, the EEOC issued Plaintiff a Dismissal and Notice of Rights.

20. This action is commenced within ninety (90) days of receipt of the Dismissal and Notice of Rights.

**MATERIAL FACTS**

21. In or around 2003, PLAINTIFF was diagnosed with Bipolar disorder (hereinafter referred to as "disability"), which substantially limits several life activities, including but not limited to concentrating and working.

22. On or around June 1, 2016, Defendant CHICHESTER hired PLAINTIFF as the Director of Facilities.

23. Throughout his employment, PLAINTIFF worked diligently in his position and received praise for his work performance.

24. In or around February 2019, PLAINTIFF suffered an extreme flare up of his disability and took a leave of absence to treat same.

25. During PLAINTIFF'S leave of absence, Defendant CIVERA (Caucasian) acted as interim Director of Facilities.

26. In or around November 2019, PLAINTIFF returned to work without restrictions, as a Supervisor. Thereafter, Defendant CIVERA officially assumed the role of Director of Facilities.

27. In late-February 2020, Defendants' Facilities Secretary and Food Services Secretary informed PLAINTIFF that Defendant CIVERA boasted about unauthorized access into the Human Resources office afterhours and accessed PLAINTIFF'S medical records from his personnel file.

28. Later that same month, the above-mentioned employees informed PLAINTIFF that Defendant CIVERA told a joke using a racial epithet, with several black and/or minority employees present at the time. As a joke, Defendant CIVERA stated that he had recently responded to a fire in a predominately black community, and that the cause of the fire was determined to be an "NBC". Defendant CIVERA explained that "NBC" stood for "Niggers Burning Chicken".

29. PLAINTIFF had also personally witnessed, on two separate occasions, Defendant CIVERA use the word "nigger" when referring to black people.

30. On March 2, 2020, PLAINTIFF met with Defendant NERELLI and Defendant PUCKETT and complained of Defendant CIVERA'S racist remarks. PLAINTIFF also complained that Defendant CIVERA'S wrongfully accessed PLAINTIFF'S medical records. Further, Plaintiff explained that because Defendant SERINO and Defendant CIVERA were friends outside of the workplace, employees were in fear of complaining of Defendant CIVERA'S conduct to Defendant SERINO. Defendants NERELLI and PUCKETT stated they would investigate PLAINTIFF'S complaint.

31. Shortly thereafter, following the March 2, 2020 meeting, PLAINTIFF submitted a written statement outlining Defendant CIVERA'S discriminatory and harassing conduct to Defendants NERELLI and PUCKETT.

32. On June 18, 2020, another employee informed PLAINTIFF that a few months prior, DEFENDANT CIVERA yelled "nigger" when he became frustrated while on a job assignment.

33. On June 18, 2020, PLAINTIFF reiterated his complaints of Defendant CIVERA'S conduct and Defendant's lack of remedial action to Defendant NERELLI.

34. On June 23, 2020, Defendant SERINO informed PLAINTIFF that an investigation was conducted, and that Defendant CIVERA was "disciplined" for his actions.

35. On July 1, 2020, PLAINTIFF voiced his complaints to Defendant CHICHESTER, wholly and individually, of Defendant CIVERA'S conduct and requested that a second investigation be conducted.

36. On July 7, 2020, within a week of his complaint, Defendant CIVERA gave PLAINTIFF a write up for alleged insubordination for failing to complete a work assignment. The insubordination claims were false. Prior to any of PLAINTIFF'S complaints, he had never received a write up.

37. On July 9, 2020, PLAINTIFF contacted Defendant TESTA to appeal the write up that he received. PLAINTIFF did not receive a response from Defendant TESTA.

38. On July 16, 2020, Defendant CHICHESTER'S President of the School Board, Ms. Ruth Ann Baiocco, informed PLAINTIFF that an investigation was being conducted into his complaints against Defendant CIVERA. PLAINTIFF never received any findings of the investigation.

39. On August 27, 2020, Defendant CIVERA informed Plaintiff that he had been permanently transferred from supervising the day shift (8:00 A.M. to 4:30 P.M.) to the evening shift (3:00 p.m. to 11:30p.m.). PLAINTIFF had worked the day shift his entire employment with Defendant. The shift change was a clear act of retaliation for PLAINTIFF'S complaints of race discrimination.

40. On September 1, 2020, PLAINTIFF provided a doctor's note to Defendant SERINO that advised that switching to evening shift would disrupt the treatment for his disability, and that he needed to stay on the day shift. PLAINTIFF'S doctor advised that the change in his work schedule would be detrimental to PLAINTIFF'S mental health, hormonal balance with his medication, and sleep hygiene.

41. Defendant SERINO simply responded to PLAINTIFF that he was acting in an insubordinate manner for refusing to accept the evening shift transfer. However, PLAINTIFF was not being insubordinate. PLAINTIFF was reminding Defendant SERINO of a serious disability from which he suffered, a disability which had caused him to miss several months of work not even a year prior. Further, PLAINTIFF was providing doctor's notes stating that he could not work the shift they were attempting to force him to work, in direct retaliation for him reporting Defendant CIVERA'S racist remarks.

42. On September 4, 2020, Defendant SERINO informed PLAINTIFF that he would need to attend a meeting to engage in the interactive process as required under the ADA. Defendant SERINO informed PLAINTIFF that he could retain legal counsel if desired. At that time, PLAINTIFF retained an attorney.

43. On September 25, 2020, PLAINTIFF attended the interactive process meeting with his counsel, to discuss his accommodation in the form of staying on the day shift.

44. On September 28, 2020, Defendant SERINO informed PLAINTIFF that his request to work the day shift was denied. Further, at no point in time did Defendants explain or articulate why PLAINTIFF could not work the day shift.

45. Thereafter, PLAINTIFF requested the ADA paperwork several times, however, Defendants did not provide it to him. PLAINTIFF, in accordance of his medical restrictions, uses his personal time off to leave early from the night shift.

46. On numerous occasions, Defendant SERINO threatened to discipline PLAINTIFF for using his PTO to leave early from the night shift, despite knowledge of his medical condition, his need for accommodation, and his doctor's restrictions which barred him from making the retaliatory shift change.

47. On October 5, 2020, Defendants issued PLAINTIFF a disciplinary letter for failing to properly secure a cabinet to a wall on August 19, 2020. PLAINTIFF had completed the task along with his coworker Rock Williams (African American).

48. Upon information and belief, Defendants originally gave the write up to Mr. Williams. However, after Mr. Williams complained to Defendants of race discrimination, pointing out that seven employees worked on the installation and he, the only black employee who had worked the project, was the only one being written up. Thereafter, Defendant instead gave the exact same write up to PLAINTIFF. Upon information and belief, no other party was written up.

49. On November 6, 2020, Defendant SERINO placed Plaintiff on administrative leave with pay for allegedly, inter alia, failing to return his FMLA paperwork, filing to inform Defendants if he could work evening shifts in its entirety, falsifying daily logs and reports of completion of assignments, as well allegedly calling Defendant CIVERA "Mussolini".

50. PLAINTIFF has endeavored to have the paperwork completed but has been stymied by COVID-19 pandemic and going between doctor's offices.

51. Further, Defendants' other allegations are categorically false, and fabricated to characterize PLAINTIFF as an insubordinate employee.

52. Despite, Defendant's knowledge of PLAINTIFF's disability, and need for accommodation in the form of returning to the day shift, Defendants' continue to refuse to accept PLAINTIFF's physician note and return him to the day shift.

53. Defendant's allegations are pretextual.

54. The foregoing allegations are a clear act of retaliation against PLAINTIFF for his disability, engaging in his protected activities under the ADA and FMLA, and/or for engaging in a protected activity under Title VII by complaining of race discrimination and/or harassment.

55. As a result of Defendants' actions, PLAINTIFF felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

56. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and PLAINTIFF also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

57. That as a result of Defendants' conduct, the PLAINTIFF was caused to sustain serious and permanent personal injuries, including but not limited to permanent psychological injuries.

58. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, PLAINTIFF demands Punitive Damages against all the Defendants jointly and severally.

59. PLAINTIFF further claims aggravation, activation and/or exacerbation of any preexisting condition.

60. PLAINTIFF claims that Defendants unlawfully discriminated against PLAINTIFF because of his sexual orientation and/or his race and because he complained of an opposed the unlawful conduct of Defendants related to the above protected class.

61. PLAINTIFF further claims constructive and/or actual discharge to the extent PLAINTIFF is terminated from PLAINTIFF'S position as a result of the unlawful discrimination and retaliation.

62. The above are just some examples, of some of the discrimination and retaliation to which Defendants subjected PLAINTIFF to on a continuous and on-going basis throughout PLAINTIFF'S employment.

63. The Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

64. PLAINTIFF claims alternatively that PLAINTIFF is an Independent Contractor, and PLAINTIFF makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors. Furthermore, in such case, PLAINTIFF claims that Defendant owed and breached its duty to PLAINTIFF to prevent the harassment, discrimination, and retaliation and is liable therefore for negligence.

65. PLAINTIFF claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

## COUNT I
## DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT
**(against corporate Defendants only)**

66. Plaintiff hereby incorporates all allegations contained in the paragraphs above.

67. Plaintiff claims Defendants violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (*ADA*), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

68. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

69. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his disability.

70. As such, Plaintiff has been damaged as set forth herein.

## COUNT II
## RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT
**(against corporate Defendants only)**

71. Plaintiff hereby incorporates all allegations contained in the paragraphs above.

72. Plaintiff claims Defendants violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (*ADA*), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

73. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter IV, Section 12203, Discrimination [Section 102] states:

   a. "(a) Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
   b. (b) Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."

74. Defendants engaged in an unlawful discriminatory practice by retaliating against Plaintiff due to Plaintiff's disability and/or because of his need for reasonable accommodations and/or due to his reports of discrimination and harassment in the workplace.

75. As such, Plaintiff has been damaged as set forth herein.

## COUNT III
## VIOLATIONS OF THE
## FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. §§ 2601 et seq.("FMLA")

76. Plaintiff hereby incorporates all allegations contained in the paragraphs above.

77. The FMLA provides eligible employees of covered employers with up to 12 workweeks of unpaid, job protected leave in a 12-month period for, *inter alia*, a serious health condition that makes the employee unable to perform the essential functions of his job. 29 U.S.C. §§ 2601 et seq.

78. A covered employer must provide FMLA benefits and protections to eligible employees and comply with other responsibilities under the FMLA and its regulations at 29 C.F.R. part 825.

79. At all relevant times, Plaintiff was an eligible employee of a covered employer with a qualifying medical condition entitling him to the protections of the FMLA.

80. Defendant violated the FMLA by interfering with, restraining and/or denying Plaintiff's rights under the FMLA by, *inter alia*:

   a. Failing to comply with the general notice requirements under the FMLA;

   b. Failing to comply with the eligibility notice requirements under the FMLA;

   c. Failing to comply with the rights and responsibilities notice requirements under the FMLA;

   d. Failing to comply with the designation notice requirements under the FMLA;

   e. Failing to provide notice of a fitness-for-duty certification with the designation notice as required by the FMLA;

   f. Failing to continue to contribute to Plaintiff's health benefits while he was placed on involuntary medical leave;

   g. Discharging and/or constructively discharging, suspending and/or disciplining Plaintiff notwithstanding that Plaintiff was fit to perform his duties and return to work at the end of his FMLA leave;

   h. Retaliating against Plaintiff for asking for attempting to exercise his rights under the FMLA;

   i. Failing to provide Plaintiff with the proper FMLA forms and/or medical certifications;

  j. Failing to supervise and/or train its employees and supervisors on compliance with the provisions of the FMLA;

  k. Failing to have in place proper FMLA policies, procedures and compliance; and/or

  l. Otherwise violating the FMLA.

 81. Defendant's violations of the FMLA were grossly negligent and/or willful.

 82. As a direct and proximate cause of Defendant's willful violations of the FMLA, Defendant is liable for Plaintiff's compensation and benefits lost by reason of the violations, for other actual monetary losses sustained as a direct result of their violation, and for appropriate equitable or other relief tailored to the harm suffered by Plaintiff. See 29 CFR 825.300 (e).

**COUNT IV**
**RETALIATION**
**FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. §§ 2601 et seq. ("FMLA")**

 83. Plaintiff hereby incorporates all allegations contained in the paragraphs above.

 84. Plaintiff was an eligible employee under the definitional terms of the FMLA.

 85. Plaintiff requested FMLA leave to care for his children.

 86. Defendant retaliated against Plaintiff for requesting and taking FMLA leave by disciplinary actions taken against him.

 87. Defendant's violations of the FMLA were grossly negligent and/or willful.

 88. As a direct and proximate cause of Defendant's willful violations of the FMLA, Defendant is liable for Plaintiff's compensation and benefits lost by reason of the violations, for other actual monetary losses sustained as a direct result of their violation, and for appropriate equitable or other relief tailored to the harm suffered by Plaintiff. See 29 CFR 825.300 (e).

**COUNT V**
**DISCRIMINATION UNDER TITLE VII**
**(against corporate Defendants only)**

89. Plaintiff hereby incorporates all allegations contained in the paragraphs above.

90. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender.

91. SEC. 2000e-2. *[Section 703]* states as follows:

> (a) Employer practices
> It shall be an unlawful employment practice for an employer -
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

92. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff due to his complaints of race discrimination and/or harassment.

## COUNT VI
### RETALIATION UNDER TITLE VII
**(against corporate Defendants only)**

93. Plaintiff hereby incorporates all allegations contained in the paragraphs above.

94. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer: "(1) to…discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this subchapter."

95. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e et seq. by retaliating against Plaintiff with respect to the terms, conditions, and/or privileges of his employment because of his opposition to and reporting of the unlawful employment practices of Defendants.

## COUNT VII
## DISCRIMINATION UNDER STATE LAW
(against all named Defendants)

96. Plaintiff hereby incorporates all allegations contained in the paragraphs above.

97. The PHRA § 955 provides that it shall be an unlawful discriminatory practice: "(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

98. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of Plaintiff's disability and/or due to his complaints of race discrimination/harassment .

99. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the PHRA § 955.

## COUNT VIII
## RETALIATION UNDER STATE LAW
(against corporate Defendants only)

100. Plaintiff hereby incorporates all allegations contained in the paragraphs above.

101. PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

102. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## IX
## DISCRIMINATION UNDER STATE LAW
**(against all named Defendants)**

103. Plaintiff hereby incorporates all allegations contained in the paragraphs above.

104. PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

105. Defendants engaged in an unlawful discriminatory practice in violation of PHRA §955(e) by committing assault and battery, aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

## COUNT X
## DISCRIMINATION UNDER STATE LAW – AIDING AND ABETTING

**(against individual Defendants only and not against corporate Defendants)**

106. Plaintiff hereby incorporates all allegations contained in the paragraphs above.

107. PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

108. Defendants engaged in an unlawful discriminatory practice in violation of PHRA §955(e) by committing assault and battery, aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

109. The individually named Defendants took active part by aiding, abetting, compelling, and inciting the discrimination and harassment described in detail above.

110. Any individuals who may not have had direct supervisory authority over Plaintiff are still subject to individual liability under this section as they actively took unlawful action against Plaintiff pursuant to the direction, instruction, and sanctioning of individuals with direct supervisory authority over Plaintiff.

111. Individuals without supervisory authority act with supervisory authority when they carry out unlawful discriminatory conduct at the direction and with the express authorization of individuals with supervisory authority.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

        **DEREK SMITH LAW GROUP, PLLC**
        *Attorney for Plaintiff*

BY: */s/Erica A. Shikunov*
       Erica A. Shikunov, Esq.
       1835 Market Street, Suite 2950
       Philadelphia, PA 19103
       Phone: 215.391.4790
       Email: erica@dereksmithlaw.com

DATED: April 2, 2021