**Michael I. Levin, Esquire**
**Attorney I.D. #21232**
**Michael T. Sweeney, Esquire**
**Attorney I.D. #65794**
**LEVIN LEGAL GROUP, P.C.**
**1301 Masons Mill Business Park**
**1800 Byberry Rd.**
**Huntingdon Valley, PA 19006**
**(215) 938-6378**
*Counsel for Defendants, Chichester School District, Fred Serino, Daniel Nerelli,*
*Anthony Testa, James Stewart ("District Defendants")*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL TOBIN, | : | |
|    Plaintiff | : | |
| | : | |
|    vs. | : | CIVIL ACTION |
| | : | |
| CHICHESTER SCHOOL DISTRICT, | : | No.: 21-1579 |
| et al, | : | |
|    Defendants. | : | |
| | : | |

## PRETRIAL MEMORANDUM OF DEFENDANTS' CHICHESTER SCHOOL DISTRICT, FRED SERINO, DANIEL NERELLI, ANTHONY TESTA, and JAMES STEWART ("DISTRICT DEFENDANTS")

Defendants, Chichester School District ("School District"), Fred Serino, Daniel Nerelli, Anthony Testa, and James Stewart ("District Defendants"), hereby file their Pretrial Memorandum, pursuant to this Court's Scheduling Order.

## I.    Statement of the Nature of the Action

In this employment case, Plaintiff Paul Tobin ("Tobin"), a former employee of the Defendant School District, alleges the District Defendants discriminated

against him and retaliated against him.  The District Defendants allege that Tobin was insubordinate and failed to follow the instructions dictated by the School District when it required him to supervise the custodial staff during the second shift.  The School District further maintains its policies and procedures and their actions in investigating and responding to Tobin's complaints were reasonable. Tobin asserts jurisdiction in the Federal Court by alleging that the actions of the Defendants violated his rights under the Fourteenth Amendment to the United States Constitution.

## II.    Counter Statement of Facts

The District Defendants incorporate herein their Statement of Facts in their pending Motion for Summary Judgment as follows.

Plaintiff was hired as Director of Facilities by the School District on May 17, 2016.  (Ex. C, Serino Affidavit at ¶ 2).  His first day of work was June 1, 2016. (Ex. A, Complaint, at ¶ 22).  Due to medical issues, Plaintiff was on FMLA for 12-weeks, from March 4, 2019, to May 31, 2019.  (Ex. C, ¶ 3).  At the conclusion of the FMLA, Plaintiff requested a 6-month leave of absence beginning on June 1, 2019, and it was granted.  *Id.*  Plaintiff requested to be demoted or reassigned as Facilities Supervisor when he returned to work in November 2019.  *Id.*  When Plaintiff returned to work, there were no restrictions.  (Exhibit B, Plaintiff's July 16, 2021, deposition transcript, p.157).

Defendant Civera who had been Facilities Supervisor, was promoted to Director of Facilities.  (Complaint, at ¶¶ 25-26).  Friction between Civera and Tobin appears to have started around February 2020.  By June 2020, each was filing complaints about the other. (Ex. C, ¶ 4).

On July 1, 2020, Plaintiff sent an email to District Defendants and the School Board of Directors that alleged Defendant Civera made inappropriate comments.  (Ex. A, Complaint, at ¶ 35.  On July 16, 2020, Ms. Ruth Ann Baiocco responded to Plaintiff's email dated July 1 that an investigation was being conducted.  (Ex. A., Complaint, at ¶ 38).

After the two reports by Plaintiff that Defendant used inappropriate language with one or two other co-workers at the District, but not witnessed by Plaintiff, the School District, including Defendant Serino and Defendant Testa, performed an investigation into the alleged statements to other employees and issued to separate disciplinary actions against Defendant Civera.  (Ex. G, pp. 24-33).

Plaintiff's complaint that Defendant Civera made inappropriate comments was not directly heard but rather allegedly reported to him by other employees. (Ex. B, pp. 44-49, 83-85).

Unrelated to the friction between Plaintiff and Defendant Civera, in July 2020, a cabinet was hung on a wall in the Education Center.  The incident led to a screw being screwed into an electrical wire, shorting a circuit, and shutting down

air conditioning. (Ex. C, ¶ 6).  This led to an investigation of who was responsible. Plaintiff was interviewed along with others involved in the incident.  *Id.* Defendants Serino and Testa conducted interviews and Defendant Serino was responsible to make appropriate findings.  *Id.*, and Anthony Testa Affidavit, Ex. E, ¶¶ 3-5.

In August of 2020, due to the widespread COVID-19 pandemic and the imminent start of the 2020-2021 school year, there was an increased need to clean, sanitize and prepare all school buildings for the return of staff and students.  (Ex. C, ¶ 7).  Mike Civera recommended a supervisor be assigned to second shift to make sure cleaning was done properly.  *Id.*  I discussed this with Mr. Civera and Mr. Testa, and it was agreed that Mr. Tobin, as the only Facilities Supervisor, was appropriate person to assign to that task.  *Id.*

Before the new school year was to begin, Defendant Civera met with Defendant Testa, and it was decided Plaintiff would supervise the second shift custodians.  (Ex. C, ¶ 8).  Defendants Civera and Testa wanted to make sure that the night shift custodians were properly supervised since the school year would be in-person after being all virtual from late March through the remainder of the 2019-2020 school year.  As a result, Plaintiff was informed his new workday was 3:00 PM to 11:30 PM starting on Monday, August 31, 2020.  *Id.*

Plaintiff knew this time was particularly significant to the School District

because students were coming back to the schools for in-person school days after a long period where school was held virtually due to COVID-19 restrictions.  (Ex. C, ¶ 9).  Plaintiff understood he was needed to work the second shift because of the need to supervise janitorial staff working overnight to ensure the enhanced cleaning of classrooms (due to COVID-19) for the next school day.  *Id.*

Plaintiff testified he understood district-wide drastic changes were made when the pandemic began in mid-March 2020.  (Ex. B, p. 34).  Despite this understanding, Plaintiff alleges he was discriminated and retaliated against when Defendant Civera told him in the spring or summer of 2020 that he would be concentrating on supervision of the custodians.  (Ex. B, pp. 35-41).  Plaintiff could not state who was involved in this decision and did not inquire.  *Id.*  Plaintiff was not demoted in status or salary because of the assignment and continued to have full responsibility of the entire facilities department when Defendant Civera was absent.  *Id.*

Plaintiff alleges he was told by secretaries that Defendant Civera told them he had access to Plaintiff's personal medical information.  (Ex. B, pp. 41-44).  At his deposition, Plaintiff could not say what medical information was accessed.  (Ex. B, pp. 60-62).  Plaintiff also said it was alleged by the secretaries the access was made after hours.  *Id.*  Personal medical files are kept by Defendant Serino in a locked cabinet that is not and has not been accessible by Defendant Civera.  (Ex.

C, ¶ 10).

On Monday, August 31, 2020, Plaintiff submitted a doctor's note that was dated Friday, August 28, 2020, suggesting that his shift times should not change. The doctor's note said that it was the doctors' opinion "that a shift in Mr. Tobin's schedule would undo the work he has put into the program in maintaining his [health]."  (Ex. C, ¶ 11).  The note is Exhibit C-1.

Plaintiff testified he attempted to obtain the doctors' note about three to four weeks in advance of his shift change saying "…I had previously asked for a letter to block me being moved to the second shift."  (Ex. B, p. 216).

Even though he had been told that his shift was not to start on August 31 until 3:00 PM, Plaintiff showed up to work at approximately 7:45 AM instead of 3:00 PM as assigned.  Plaintiff gave no prior notice he was going to show for the first shift. Defendant Civera found work for him to do that day.  (Ex. C, ¶ 12). Defendant Serino sent an email to Plaintiff advising him that he needs to report to work when assigned—i.e., 3:00 PM—and that it is insubordination for him to show up at his former time, unannounced and without talking to the School District first. *Id.*  Plaintiff testified he read and understood the email from Defendant Serino. (Ex. B, p. 221-22.)  Defendant Serino also told him that an interactive process meeting would be scheduled and that if he could not work due to health reasons, he could use sick leave.  (Ex. A., Complaint, at ¶42).  (Ex. C, ¶ 13, Ex. C-2).

Plaintiff then began reporting to work at 3:00 PM as directed, but left work every workday thereafter at or around 7:00 PM, usually taking a one-half day sick leave. (Ex. C, ¶ 14).

At the end of that week, Defendant Serino sent a letter to Tobin scheduling an interactive process meeting for September 8, 2020.  (Ex. C, ¶ 15).  Letter is Exhibit C-3.  The meeting began, but it was cut short when Plaintiff said he wanted to have an attorney.  (Ex. B, pp. 231-34, Ex. C, ¶ 16, transcript is Ex. C-4).  The interactive process meeting was scheduled for September 17, 2020, but counsel asked for an adjournment.  (Ex. B, p. 236).  The interactive process meeting was conducted on September 25, 2020, and Plaintiff was represented by counsel.  (Ex. A, Complaint, at ¶ 43).  (Ex. C, ¶ 17).  The transcript is Exhibit C-5.

Based on the discussions with the administration, it was concluded that working the 3:00 PM to 11:30 PM shift was an "essential function" of the job. (Ex. C, ¶ 18).  Further, at the interactive process meeting, Plaintiff did not know if there were any accommodations that could be provided that would enable him to work the evening shift.  Consequently, Defendant Serino sent a letter to Plaintiff on September 28, 2020, saying, in part:

"You and/or your attorney suggested that perhaps you could talk to your doctor to determine what accommodations might be necessary to enable you to work the evening shift. Please talk to your doctor about that and if there are any accommodations that your doctor believes may exist to enable you to work that shift, we will be happy to schedule another interactive process meeting to address those issues. ***We would hope that you can talk to your doctor within the next two***

*weeks.* Can you kindly ***let us know within two weeks*** whether you are going to talk to your doctor, what accommodations your doctor may recommend to enable you to perform the essential functions of your job during the evening shift and whether you are requesting any accommodations to enable you to work the 3:00 PM to 11:30 PM shift." (Emphasis added) (Ex. C, ¶ 19, Ex. C-6).

Plaintiff testified he received the September 28, 2020, letter but did not respond to the School District as requested. (Ex. B, pp. 115-121.) Plaintiff did not know why he did not respond to the letter as requested. *Id.*

In addition, on October 2, 2020, Defendant Serino sent FMLA forms to Plaintiff. (Ex. C, ¶ 20, Ex. C-7). Plaintiff was required to have the FMLA Physician's Certification form completed and returned by October 19, 2020. *Id.* While the processes surrounding the interactive process meeting and the FMLA were occurring, so too was the investigation of the cabinet incident. Initially, the District Defendants did not know that Plaintiff had any involvement in the incident. Based on the records, it appeared that another employee was allegedly the responsible employee. A notice of allegations was sent to that employee, and he was interviewed on September 8, 2020, so that he could give his side of the story. (Ex. C, ¶ 21). Through the interview of that employee, he provided the names of several other employees involved in the incident, including Plaintiff. (Ex. C, ¶ 22). Because of the information from that employee, notices were sent to the others involved in the cabinet incident, including Plaintiff. *Id.* Plaintiff was interviewed about the incident on October 5, 2020. Plaintiff was not represented

by counsel at that interview, and he stated that he did not want to be.  (Ex. C, ¶ 23). Transcript is Exhibit C-8.

Plaintiff testified he did not know who decided to send the October 2, 2020, letter other than Mr. Serino.  (Ex. B, pp. 98-100).  He did not ask why Defendant Serino sent the letter or if any other defendant was involved in sending the letter. *Id.*

Plaintiff received a Notice of Eligibility and Rights and Responsibilities that were included in Defendant Serino's October 2, 2020, letter.  (Ex. C, ¶ 24, Ex. C-7).  The letter required Plaintiff to return the FMLA form by October 19, 2020.  *Id.* Plaintiff testified at his deposition that he read the letter and form but could not get it signed.  (Ex. B, p. 101).   Plaintiff said he sent the FMLA form to Dr. Cespon at Crozer-Chester and personally delivered it.  *Id.*  He testified Dr. Cespon was not filling it out.  (Ex. B, p. 103).  When he got through to Dr. Cespon's office, Plaintiff was informed by the doctor he was not FMLA eligible.  (Ex. B, p. 107). Plaintiff testified he then went to Dr. Munshower, his primary care doctor.  (Ex. B, p. 111).   Plaintiff brought Dr. Munshower the FMLA paperwork and Dr. Munshower refused to sign it.  *Id.*

It appeared Plaintiff did not talk to his doctor about the accommodations that might be provided that would enable him to work his full shift and he did not return the FMLA physician's certification as required under law and directed by

Defendant Serino.  (Ex. C, ¶ 25).  As a result, on October 28, 2020, Defendant

Serino sent a letter to Plaintiff calling his attention to these issues.  Serino ended

the letter by stating:

 "As a result of your failure to provide the requested information and to fulfill your
duties in the ADA and the FMLA, your practice of leaving work part way through
your shift is no longer being approved.  We will be happy to revisit this issue once
we receive the requested information from you.  If you leave early, it will be
considered an unauthorized leave, subject to being reconsidered when and if you
provide the requested information."  (Ex. C, ¶ 26, Ex. C-9).
Plaintiff never provided the requested information.  (Ex. C, ¶ 27).

Plaintiff testified he did not respond to Defendant Serino: "Honestly, I – I

may have just overlooked it."  (Ex. B, p. 125).

Plaintiff left work early again on October 28, 2020, despite what Defendant

Serino told him.  Learning that Plaintiff left work early, Defendant Serino followed

up with Plaintiff on October 29 saying:

"Paul, you were given a letter from me yesterday that expressly stated that 'if you
leave early, it will be considered an unauthorized leave, subject to being
reconsidered when and if you provided the required information.'  Despite being
told that, you left early, sending an e-mail to Mr. Mike Civera saying: 'Leaving
early this evening and using 4 hours personal time.' That leave is considered in
violation of what you were told. You are not approved and will not be approved for
any further absences unless and until we receive the information that we have
requested. I reserve the right to determine what discipline, if any, to impose at a
later date."
(Ex. C, ¶ 28, Ex. C-10).

Despite receiving this email from Defendant Serino on the 29th, Plaintiff left

early again on the 29th.  Before he left his shift four hours early that evening,

Plaintiff sent the following email:

"Mr. Serino, I have the note from my physician to you regarding the shift

change and since then have asked multiple times for the ADA paperwork and have not received anything from your office.  I did receive the FMLA paperwork from Shari and have given it to the mental health provider.  They stated today that it may take a week or two longer until I have it completed back to you." (Ex. C, ¶ 29, Ex. C-11).

Defendant Serino sent another email on the 30th expressing his disappointment at Plaintiff's behavior and spelling out several details.  (Ex. C, ¶ 30).  Defendant Serino closed the email on the 30th at 4:02 PM follows:

"To be clear, ***you must tell me whether you are working your entire shift today. If not, you will be disciplined. If you do not advise me within 30 minutes of this e-mail to you that you are working your entire shift tonight, you are suspended without pay, and are to leave work immediately and not return until you can work your entire shift.*** If you need accommodations to work your entire shift, you are to advise me promptly and we will schedule an interactive process meeting. We will reconsider these decisions when and if you submit the required information and FMLA paperwork."  (Emphasis added) (Ex. C, ¶ 31, Ex. C-12).

Plaintiff did not contact Serino within 30 minutes as directed.  (Ex C, ¶ 32).

Instead, at about 4:51 PM Plaintiff sent the following email to Serino:

"I have turned in a note from my doctor and through my attorney have requested ADA paperwork several times. We had a reasonable accommodation meeting where such paperwork was requested. The school district's attorney hired a court reporter to be present at that meeting and we discussed the accommodations at that time as well, on the record. You have been on notice for in excess of two months that I require accommodations and that I have a known disability. Instead of working with me, you are now retaliating and punishing me. I cannot work outside of my physicians [*sic*] restrictions of which you have been on notice for over two months. By insisting that I do so, you are discriminating and retaliating against me. So that you are aware, I have passed your correspondence on to my counsel.  I am fully capable of working within my restrictions and was doing so quite successfully previously.  All I want to do is work in peace." (*Id.*, Ex. C-13).

Despite that Plaintiff read the Serino emails, he never told Mr. Serino the date he first provided FMLA paperwork to his healthcare providers.  (Ex. B, p. 136).   Plaintiff also failed to tell Mr. Serino when he followed up with his

healthcare providers.  Plaintiff testified at his deposition he did not know why he failed to tell Mr. Serino this information.  *Id.*

That evening, Plaintiff sent an email to Defendant Civera he was leaving work at 7:00 PM.   (Ex. C., ¶ 33).   Plaintiff testified he did not respond to Defendant Serino's directive to respond and inform Serino Plaintiff would work his entire shift: "As I told you before, his directive was to respond in 30 minutes to tell him I was working the whole shift.  There was no need to respond when I wasn't staying."  (Ex. B, p. 141).

In addition to the foregoing matters, there were other issues with Plaintiff's work performance.  Complaints were being received that Plaintiff was calling Defendant Civera names like "Mussolini," "backstabber" and "the Fuhrer."  (Ex. C, ¶ 34).

On November 2, 2020, Defendant Serino responded to Plaintiff's allegations from his October 30, 2020, email.  (Ex. C, ¶ 35, Ex. C-14).

On November 6, 2020, Defendant Serino sent a notice of allegations to Plaintiff.  (Ex. C, ¶ 36, Ex. C-15).  It became clear to Defendant Serino that Plaintiff would no longer follow instructions and was doing whatever he wanted. (Ex. C, ¶ 37).  A hearing/meeting took place with Plaintiff and his counsel on November 16, 2020, for the purpose of allowing Plaintiff to respond to the allegations against him.  (Ex. C, ¶ 38, transcript is Ex. C-16).  Although more than

two months passed since Plaintiff had been asked to provide the information relevant to accommodations and the physician's certificate under the FMLA, Plaintiff still had not provided the information to the School District.   After considering the allegations and Plaintiff's responses to the allegations, Defendant Serino decided to suspend Plaintiff pending discharge.   (Ex. C, ¶ 39, C-17).   A Statement of Charges was issued by Defendant Nerelli on December 4, 2020.   (Ex. C, ¶ 40, Ex. D, ¶ 11, Ex. D-1).   The reasons for Plaintiff's discharge are as stated on the attached Statement of Charges.   *Id.*   Plaintiff testified he had no idea who decided to issue the November 6, 2020, letter from Defendant Serino.   (Ex. B, pp. 290-91).   Plaintiff could not say if any other defendant had a role in issuing that letter.   (Ex. B, pp. 291-94).

Plaintiff's complaint alleges "Plaintiff has endeavored to have the paperwork completed by has been stymied by COVID-19 pandemic and going between doctor's offices."   (Ex. A, Complaint, at ¶ 50).   One year has transpired since Plaintiff was assigned the second shift.   All Plaintiff has produced to the School District in support of his contention he cannot work the second shift is the September 1, 2020, letter that does not state he cannot work the second shift. Plaintiff has had one year to get one of his three treating physicians to write such a letter but has failed to secure one.   (Ex. C, ¶ 41).

The first time Plaintiff told the District Defendants his treating physicians

refused to sign the FMLA paperwork was on July 16, 2021, at his deposition. (Ex. B, p. 148, Ex. C, ¶ 42). Plaintiff testified he could not provide any dates to which he furnished his doctors FMLA paperwork, nor could he provide dates when he discussed with his doctors any accommodations that could be provided to him that would enable Plaintiff to work the second shift. (Ex. B, p. 155). Further, Plaintiff could not provide any evidence of conversations with his doctors about accommodations to allow him to perform the essential functions of his job on the second shift. (Ex. B, p. 156).

After Plaintiff was suspended pending discharge, he filed for Unemployment Compensation benefits. His claim was denied upon finding that Plaintiff engaged in willful misconduct. (Ex. C, ¶ 43, Ex. C-18).

After waiting for another several months, Plaintiff was finally dismissed on or about April 13, 2021. (Ex. C, ¶ 44). Plaintiff was investigated, disciplined, and ultimately terminated for insubordination. (Ex. C, ¶ 44).

Plaintiff's deposition was conducted on July 16, 2021. The transcript of that deposition is attached as Exhibit B.

Plaintiff testified he did not complain about the assignment of the second shift when he received it. (Ex. B, p. 198). He does not know who made the decision to change him to the second shift. (Ex. B, p. 199).

Defendant Fred Serino's Affidavit and exhibits are attached as Exhibit C.

The deposition of Defendant Serino was conducted on August 20, 2021.  Portions of the deposition transcript are attached hereto as Exhibit G.

Defendant Dr. Daniel Nerelli's Affidavit and exhibit are attached as Exhibit D.   As per his Affidavit, he had no active role in any investigation, recommendation, decision-making, or discipline of Plaintiff in any way.  (Ex. D, ¶ 11).

Defendant Anthony Testa's Affidavit is attached as Exhibit E.   Anthony Testa had no role in any recommendation, decision-making or discipline of Plaintiff in any way.  (Ex. E, ¶ 5 and ¶ 9.)

Defendant James Stewart's Affidavit and exhibit are attached as Exhibit F. As per his Affidavit, he had no role in any investigation, recommendation, decision-making, or discipline of Plaintiff in any way.  (Ex. F, ¶ 4).

Of Defendant Stewart's involvement in the lawsuit, Plaintiff testified "To tell you the truth, I think he was just maybe listed on there because he was the interim director while Mike Civera was suspended." (Ex. B, p. 23).  When pressed later in his deposition about any evidence Mr. Stewart took any action against him that he believes is unlawful discrimination or unlawful retaliation, Plaintiff said: "As I explained in my answer earlier, he was listed because of his limited area as my supervisor.  And that's all I know about it, Mr. Levin.  That's all I know." (Ex. B, p. 168).

Plaintiff testified he could not name a single employee or student at the School District who was discriminated against based on disability, nor could he name a single employee or student at the School District who was unlawfully retaliated against for any reason.  (Ex. B, p. 73).  Plaintiff testified he was accommodated for his FMLA leave and a leave of absence in 2019 and there was no discrimination or retaliation.  (Ex. B, pp. 90-97).

Plaintiff could not identify what factors were taken into consideration by each defendant in the various letters and emails that were sent to him.  (Ex. B, pp 222-24).  At his deposition, Plaintiff said the only factor he knows is the "racist remark report.  That's the factor."  (Ex. B, p. 247).  "I said I don't know the factors." (Ex. B, p. 249).  Plaintiff points to timing and does not believe there was a need for a second shift because there "was a limited crew working at night."  (Ex. B, pp. 247-49, 305-06, 337).

Plaintiff agreed that from August 31, 2020, to some unknown time, the School District was allowing him to leave early and to use sick leave or other paid time off.  (Ex. B, p. 251).  Plaintiff acknowledged the School District was not discriminating against him when it allowed him to do that.  (Ex. B, p. 252).

Plaintiff testified at his deposition for the first time that he in fact received a second note from a doctor sometime after he was placed on leave or terminated. (Ex. B, pp. 145-49.)  This note was not produced to the defendants nor in this

lawsuit until September 8, 2021.  (*Id.,* and Affidavit of Michael T. Sweeney, Esquire).

Plaintiff alleges in his Complaint there were numerous occasions when Defendant Serino threatened to discipline him for using his paid time off to leave early from the night shift.  (Ex. A, ¶ 46).  However, he could not find a single threat of such discipline before Defendant Serino's October 28, 2020, letter.  (Ex. B, pp. 271-77).

Plaintiff acknowledged his allegations in the Complaint that defendants failed to comply with notice requirements and paperwork of the FMLA are false. (Ex. B, pp. 315-25).  Plaintiff also said paragraph 85 of his Complaint is not true: "I think it's a bad cut and paste."  (Ex. B, pp. 327-28.)

Plaintiff acknowledged he has no evidence of discriminatory or retaliatory conduct: "I don't have any evidence, no."  (Ex. B, p. 330).  Of Defendant Nerelli, Plaintiff alleges "…whatever it is his intentions were, of course he's involved in all this."  (Ex. B, p. 331.).  Of Defendant Testa, Plaintiff only pointed to the July 7, 2020, insubordination write-up by Defendant Civera although Defendant Testa did not author such write-up.  (Ex. B, p. 333).  Plaintiff alleges all shift changes were approved by Defendant Testa.  (Ex. B, p. 334).

Defendant Serino's deposition was conducted on August 20, 2021. Defendants Nerelli and Testa were deposed on September 1, 2021.

Defendant Stewart's deposition was not conducted by Plaintiff.

## III.   Damages

The District Defendants deny that Mr. Tobin has any damages because of the actions of the District Defendants or is entitled to any of the relief he seeks. Mr. Tobin suffered from a pre-existing condition and continued to suffer the same conditions throughout his tenure with the School District, and thereafter.

There has been no meaningful discussion regarding demand or a settlement offer.

## IV.   Witnesses Expected to be Called at Trial

Defendants may call the following witnesses to testify at trial.

<u>Name and Address</u>                           <u>Type of Witness</u>

Fred Serino              .                      Liability
Chichester School District
401 Cherry Tree Road
Aston, PA 19104

Dr. Daniel Nerelli                             Liability
Chichester School District
401 Cherry Tree Road
Aston, PA 19104

Anthony Testa                                  Liability
Chichester School District
401 Cherry Tree Road
Aston, PA 19104

James Stewart                                  Liability
Chichester School District
401 Cherry Tree Road

Aston, PA 19104

Michael Civera                                    Liability
Chichester School District
401 Cherry Tree Road
Aston, PA 19104

E. Nichole Taylor                                 Liability
Chichester School District
401 Cherry Tree Road
Aston, PA 19104

Ruth Anne Baiocco                                 Liability
Chichester School District
401 Cherry Tree Road
Aston, PA 19104

Jacquie Jones                                     Liability
Chichester School District
401 Cherry Tree Road
Aston, PA 19104

Nancy Johnson                                     Liability
Chichester School District
401 Cherry Tree Road
Aston, PA 19104

Alex Castaldi                                     Liability
X6401
Locust Hill
832 Bethel Avenue
Upper Chichester, PA 19014

John Dwyer                                        Liability
X6420
Locust Hill
832 Bethel Avenue
Upper Chichester, PA 19014

Brian Hess                                        Liability

6402
Locust Hill
832 Bethel Avenue
Upper Chichester, PA 19014

Helen Malloy                                    Liability
X6404
Locust Hill
832 Bethel Avenue
Upper Chichester, PA 19014

James Oberhoff                                  Liability
X6401
Locust Hill
832 Bethel Road
Upper Chichester, PA 19014

Chrissie Olinger                                Liability
X2836
Education Center
401 Cherry Tree Road
Aston, PA 19014

Jim Pearlingi                                   Liability
X6401
Locust Hill
832 Bethel Road
Upper Chichester, PA 19014

Gregory Puckett                                 Liability
X5002
Education Center
401 Cherry Tree Road
Aston, PA 19014

Mary Sypinski                                   Liability
X5040
Education Center
401 Cherry Tree Road
Aston, PA 19014

Michael Williams                               Liability
X6401
Locust Hill
832 Bethel Avenue
Upper Chichester, PA 19014

Roc Williams                                     Liability
X6401
Locust Hill
832 Bethel Avenue
Upper Chichester, PA 19014

Plaintiff Paul Tobin                          (Adverse)    Liability   and
Damages

1010 Mulberry Street
Brookhaven, PA 19015

Ruben Cespon, M.D.                         Damages
Crozer Health
301 W. 15th Street
Chester, PA 19013

Nancy Powell, LPC, Psy D.                Damages
Crozer Health
301 W. 15th Street
Chester, PA 19013

Hugh Brenner, NP                            Damages
201 N. Jackson Street
Media, PA 19063

Records Custodian for Hugh Brenner      Damages
201 N. Jackson Street
Media, PA 19063

John Munshower, D.O.                     Damages
Main Line Healthcare
3855 West Chester Pike, Ste.300
Newtown Square, PA 19073

Records Custodian                         Damages
Main Line Healthcare
3855 West Chester Pike, Ste. 300
Newtown Square, PA 19073

Records Custodian                         Damages
Crozer Health
301 W. 15th Street
Chester, PA 19013

Jennifer L. Pacyon, Psy.D..               Plaintiff's Expert – Damages
Equilibria Psychological & Consultation Services
525 South Fourth Street
Philadelphia, PA 19147

## V.   Exhibits to be Offered at Trial by the Defendants

D-1    2020-12-04 Statement of Charges

D-2    2020-06-19 Email from Civera

D-3    2020-06-24 Email from Tobin

D-4    2020-05-28 Email from Tobin – Read Receipt (forward)

D-5    2020-06-19 Email from Testa

D-6    2020-05-21 Email from Tobin – Read Receipt

D-7    2020-05-18 Email from Tobin – Read Receipt

D-8    2020-05-28 Email from Tobin – Read Receipt

D-9    2020-05-28 Email from Civera

D-10  2020-08-27 Email from Tobin

D-11  2020-08-27 Email from Tobin

D-12  2020-08-27 Email from Tobin

D-13  2020-08-28 Letter from Doctor re need for accommodation

D-14  2020-08-31 Email Serino re doctor note

D-15  2020-08-31 Email Serino re doctor note

D-16  2020-09-01 Email from Tobin

D-17  2020-09-03 Letter to Tobin re Interactive Process

D-18  2020-09-08 Interactive Process Meeting Transcript

D-19  2020-09-15 Email from Tobin

D-20  2020-09-25 Interactive Process Meeting transcript

D-21  2020-09-04 Letter to Tobin re allegations

D-22  2020-09-08 Earnest Williams Loudermill transcript

D-23  2020-10-05 Letter to Castaldi re allegations

D-24  2020-09-28 Letter to Williams re allegations

D-25  2020-09-28 Letter to Tobin re allegations

D-26  2020-10-09 Alex Castaldi Loudermill transcript

D-27  2020-10-05 Michael Williams Loudermill transcript

D-28  2020-10-19 Michael Williams Loudermill transcript – Continued

D-29  2020-10-05 Paul Tobin Loudermill transcript

D-30  2020-10-09 Camden Bales Investigative Interview transcript

D-31  2020-10-09 David Mazzoli Investigative Interview transcript

D-32  2020-10-02 Letter to Tobin re FMLA

D-33  2020-09-30 Notice of Eligibility

D-34  2020-09-30 Doctor's Certification

D-35  2020-10-12 Facilities Supervisor Job Description

D-36  2020-09-28 Letter to Tobin re accommodations

D-37  2020-10-28 Letter to Tobin re Absences

D-38  2020-11-06 Letter to Tobin re allegations

D-38A 2020-11-16 Paul Tobin Loudermill transcript

D-39  2020-11-17 Letter to Tobin re suspension

D-40  2020-09-00 & 2020-10-00 Tobin Daily Log sheets

D-41  Picture of desk with stick, screws etc.

D-42  Exposed Wire picture

D-43  Picture of wall with holes

D-44  Picture of wall with holes – Annotated

D-45  2020-08-10 Work Order for tightening cabinet

D-46  Earnest Williams Attendance Sheet

D-47  2016-06-13 Letter to Tobin re employment

D-48  2018-11-08 Tobin's acknowledgement of Code of Conduct

D-49  Code of Employee Conduct

D-50  Paul Tobin Attendance Record

D-51  2020-09-14 Email from Pearlingi

D-52  2020-10-28 Statement by Castaldi

D-53  2020-08-31 Letter from Doctor re need for accommodation

D-54  2020-10-29 Tobin email to Serino

D-55  2020-06-23 Letter to Tobin From Serino

D-56  2020-06-23 Email from Tobin To Serino

D-57  Picture of melted screw in square cutout

D-58  Picture of armored cables

D-59  Close up of damaged area

D-60  2020-03-31 Email to Tobin re grass

D-61  Picture of open wall

D-62  Roc Williams Time Records

D-63  Del County Supply--Tobin

D-64  2020-10-30 Email from Serino To Tobin

D-65  2020-10-29 Email from Tobin To Serino

D-66  2020-10-30 Email from Tobin To Serino

D-67  2020-09-17 Email from Shikunov re representation of Tobin

D-68  2020-09-18 Email Chain between Levin and Shikunov

D-69  2020-09-14 Letter to Tobin re rescheduled interactive process meeting

D-70  Overtime report for Castaldi and Mazzoli

D-71  2020-10-30 Email from Tobin

D-72  2021-04-14 UC Determination

D-73  FAX from Dr re FMLA

D-74  FMLA Designation Notice 2019

D-75  Minutes 5-30-19

D-76  Special Mtg Agenda 12-3-19

D-77  Facilities mtg agenda

D-78  2021-07-02 Tobin's response to interrogatories

D-79  2021-04-05 Complaint

D-80  2021-06-03 As filed--Answer and Affirmative Defense

D-81  2021-01-05 Personnel file F District

D-82  Tobin Resume

D-83  Tobin Application

D-84  Tobin Health Record

D-85  2021-07-09 Tobin's Amended Responses

D-86  2020-10-28 Email from Tobin leaving early

D-87  Email chain 10-29-20

D-88  Answer and Affirmative Defenses--District Defendants

D-89  2020-07-07 Verbal Reprimand by Civera

D-90  Email from Tobin 7-9-20

D-91  2020-09-16 Email chain--Testa and Tobin

D-92  2020-07-12 Email from Civera

D-93  2020-09-16 Email

D-94  2020-07-16 Email from Baiocco To Tobin

D-95  2020-08-31 Email to Tobin

D-96  2020-09-18 Email from Levin

D-97  11.2.20 Serino Email to Plaintiff CSD 3049-3051

D-98  2020-11-06 Serino Notice of Allegations to Tobin

D-99  Tobin medical records from Hugh Brenner, NP

D-100 Tobin medical records from John Munshower, D.O

D-101 Tobin medical records from Nancy Powell, LPC, Psy D. and Ruben Cespon

D-102 Tobin medical records from Center for Neuroscience

D-103 Tobin medical records from Lawrence & Memorial Hospital

D-104 Plaintiff's Personnel File

D-105 Plaintiff's responses to Interrogatories

D-106 Plaintiff's responses to document requests

D-107 Defendant Civera's responses to Interrogatories

D-108 Defendant Civera's responses to document requests

D-109 District Defendants' responses to Interrogatories

D-110 District Defendants' responses to document requests

D-111 2021-09-08 Serino Affidavit

D-112 2021-07-16 Tobin Deposition Transcript

D-113 2021-08-13 Jacquie Jones Deposition Transcript

D-114 2021-08-13 Ruth Ann Baiocco Deposition Transcript

D-115 2021-08-18 E. Nichole Taylor Deposition Transcript

D-116 2021-08-18 Nancy Johnson Deposition Transcript and Errata Sheet

D-117 2021-09-28 Hugh Brenner Deposition Transcript

D-118 2021-09-29 John Munshower Deposition Transcript

D-119 2021-10-06 Nancy Powell Deposition Transcript

D-120 2021-10-06 Ruben Cespon Deposition Transcript

D-121 2021-09-01 Daniel Nerelli Deposition Transcript

D-122 2021-09-01 Anthony Testa Deposition Transcript

D-123 2021-07-15 Michael Civera Deposition Transcript

D-124  Civera complaints re Tobin

D-125 2020-08-27 Email from Tobin

D-126 Civera complaint

D-127 2020-03-31 Email from Civera

D-128 2020-03-31 Email from Tobin re grass

D-129 Email from Tobin re receipt

D-130 2020-07-06 Email from Civera

D-131 2020-07-06 Email from Civera re weeds

D-132 2020-08-31 Email from Testa

D-133 2020-09-10 Email from Testa

## VI.   Estimated Number of Days Required for Trial

The Defendants estimate that the trial in this case can be completed in five (5) days.

## VII.   Stipulation of Uncontested Facts

Stipulations have been agreed upon and were submitted jointly by Plaintiff's counsel on November 8, 2021, as per the August 17, 2021, Amended Scheduling Order.  They are as follows:

<u>Affirmative Stipulations</u>

1. The Facilities Director at Chichester School District is in charge of maintenance, custodians, and security.

2. When Mr. Tobin returned in November 2019, he voluntarily agreed to step down from his position as Facilities Director to the Facilities Supervisor position.

3. While Mr. Tobin was on leave of absence, Michael Civera, the Facilities Supervisor, acted as the interim Facilities Director.

4. The Facilities Supervisor reports to the Facilities Director and is responsible for assisting the Facilities Director.

5. Frederick Serino held the position of the Assistant to the Superintendent for Human Resources at all relevant times.

6. Anthony Testa held the position of Business Administrator at all relevant times.

7.  Daniel Nerelli held the position of Superintendent at all relevant times.

8.  Beginning December 2, 2019, Michael Civera has held the position of Facilities Director.

9.  On March 2, 2020, Plaintiff reported to Dr. Nerelli that Civera used the acronym "NBC" in the workplace.

10. The acronym "NBC" stands for "N-word burning chicken."

11. Mr. Civera did not say the N-word during that incident.

12. On March 2, 2020, Mr. Tobin met with Dr. Nerelli and Assistant Superintendent Dr. Greg Puckett.

13. On March 13, 2020, the District closed to staff and students due to Governor Wolf's order, in order to slow the spread of the COVID-19 pandemic.  Schools remained closed to students through the remainder of the 2019-2020 school year.

14. At the end of March 2020, maintenance staff returned to work on site to cut grass and maintain the District's buildings

15. Facilities staff were gradually returned to work on site during the Spring and Summer of 2020.

16. The District, including the Facilities Department, was implementing a Health and Safety Plan that included COVID-19 mitigation strategies that included cleaning and sanitizing District buildings.

17. On June 19, 2020, Mr. Civera submitted an email to Mr. Testa and Mr. Serino regarding of Mr. Tobin.

18. On June 23, 2020, Mr. Serino disciplined Mr. Civera after the investigation into the NBC incident by giving him a written reprimand.

19. On July 1, 2020, Mr. Tobin emailed the School Board Members.

20. On July 7, 2020, Mr. Tobin received a "Documented Verbal Reprimand."

21. On August 27, 2020, Mr. Tobin was assigned to the second shift.

22. On August 31, 2020, Mr. Tobin presented the School District with a doctor's note dated August 28, 2020.

23. On September 8, 2020, the District met with Paul Tobin to engage in the interactive process.  During the meeting, Mr. Tobin indicated he wanted an attorney, so the meeting was stopped so that he could retain counsel.

24. Paul Tobin last worked for the District on November 16, 2020.

25. On November 16, 2020 a Loudermill hearing was held regarding Mr. Tobin.

26. On November 17, 2020, Mr. Tobin received a letter stating he has been suspended without pay pending dismissal proceedings.

27. On December 4, 2020, Defendant Dr. Nerelli suspended Plaintiff without pay pending termination.

The Defendants respectfully reserve the right to supplement the information provided in this document.

## VIII.  Deposition Designations to be read at Trial

### Dr. John Munshower, D.O.

Page 11, line 14 to Page 13, line 21

Page 16, line 11 to Page 35, line 6

Page 39, line 25 to Page 44, line 9

Page 44, line 14 to Page 44, line 24

Page 49, line 6 to Page 49, line 12

**Hugh Brenner, N.P.**

Page 10, line 11 to Page 11, line 13

Page 12, line 2 to Page 35, line 4


**Nancy Powell, LPC, Psy D.**

Page 10, line 19 to Page 11, line 19

Page 12, line 5 to Page 14, line 14

Page 15, line 1 to Page 35, line 23

Page 36, line 24 to Page 42, line 7

Page 43, line 14 to Page 54, line 13

Page 55, line 1 to Page 59, line 9

**Ruben Cespon, M.D.**

Page 10, line 23 to Page 34, line 3

Respectfully submitted,
LEVIN LEGAL GROUP, P.C.

Dated: November 8, 2021      __*Michael T. Sweeney*_____
Michael I. Levin, Esquire
Michael T. Sweeney, Esquire
(*Counsel for Defendants Chichester School District, Fred Serino, Daniel Nerelli, Anthony Testa, James Stewart*)
1301 Masons Mill Business Park
1800 Byberry Road
Huntingdon Valley, PA 19006
215-938-6378

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I electronically filed the District Defendants' Pretrial Memorandum, and that it is available for viewing and downloading from the ECF system by all counsel of record.

LEVIN LEGAL GROUP, P.C.

Dated: November 8, 2021

/s/ Michael T. Sweeney
Michael T. Sweeney
*Counsel for Chichester School District, Fred Serino, Daniel Nerelli, Anthony Testa, and James Stewart ("District Defendants")*