IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL TOBIN, : | |
|     Plaintiff, : | |
| : | |
| : | Civ. No. 21-1579 |
| : | |
| v. : | |
| : | |
| CHICHESTER SCHOOL DISTRICT, et al, : | |
|     Defendants. : | |
| : | |

## ORDER

Plaintiff Paul Tobin brings discrimination and retaliation claims against his former employer, Chichester School District; its Board of Directors and several employees. Defendants have moved for summary judgment on all ten of Plaintiff's claims. (Doc. Nos. 19, 20). The matter has been fully briefed. (Doc. Nos. 23, 24). I will grant the Motions in part.

**I.     LEGAL STANDARDS**

I may grant summary judgment "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must initially show the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). I "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005). The opposing party must support each essential element with concrete evidence in the record. See Celotex, 477 U.S. at 322–23.

**II.    BACKGROUND**

I have resolved all disputed facts and made all reasonable inferences in Plaintiff's favor.

This case arises from Tobin's firing as District Facilities Supervisor. In May 2019, Tobin returned from FMLA leave and was voluntarily demoted from Director of Facilities to Facilities Supervisor. (Doc. No. 23-1 at ¶ 5.) Defendant Michael Civera, who was Tobin's former supervisee (having served as interim Director of Facilities while Tobin was on leave), was promoted to Director of Facilities. (Id. at ¶ 7.) In early March 2020, Tobin, who is white, reported Civera for allegedly making racist jokes and using the N-word. (Id. at ¶ 8.) Tobin was subsequently disciplined for a variety of performance-related infractions. (Id. at ¶ 25.) Tobin alleges these disciplinary measures were improper retaliation for his report. (Id.)

In August 2020, Civera recommended that Tobin—having worked the 7:30 am to 2:30 pm cleaning shift—be assigned to a second, later shift from 3:00 p.m. to 11:30 p.m. to supervise new COVID-19 sanitization protocols. (Id. at ¶¶ 7, 21.) Tobin alleges that this reassignment was also retaliatory, even though it was not a demotion of job status and did not affect his compensation. (Id. at ¶ 18, 27.) On August 31, the first day of his assignment to the second shift, Tobin submitted a doctor's note stating, "due to [Tobin's] medications, therapy and mental health diagnosis, this [assignment] could be detrimental to his Mental Health . . . we have worked very hard to regulate his medications to assist with his daily productivity and to allow him to have proper sleep hygiene . . . a shift in [Tobin's] schedule would undo the work he has put into the program in maintaining his mental health and stability." (Doc. No. 27, Ex. L.) The same day, he arrived at work at his previous start time of 7:30 a.m. (Doc. No. 23-1 at ¶ 35.)

Tobin was not allowed to return to the 7:30 a.m. shift. (Id. at ¶ 39.) Defendant Fred Serino informed Tobin that an Interactive Process Meeting would be scheduled and that if he could not work due to health reasons, he could use sick leave. (Id.) Tobin began arriving to his assigned shift but leaving some four hours early each day, using sick leave to make up the balance. (Id. at

¶ 40.) After numerous delays, an Interactive Process Meeting was held on September 25, when Tobin was represented by counsel. (Id. at ¶¶ 42-44.) The Parties did not agree on any accommodations during or after this meeting. (Id. at ¶ 40.) Serino then asked Tobin to follow up with his doctor within two weeks about potential accommodations, but Tobin did not do so. (Id. at ¶¶ 47-48.)

On October 2, Serino sent Tobin FMLA forms with instructions to complete the Physician's Certification no later than October 19, 2020. (Id. at ¶ 49.) Tobin did not complete the form in part due to COVID-19 and in part because his doctors believed he was not FMLA-eligible. (Doc. No. 25-1 at 107:7-15.)

On October 28, Serino sent Tobin a letter stating that due to his failure to provide the requested accommodations information and the FMLA certification, his practice of leaving early was no longer authorized. (Doc. No. 23-1 at ¶ 68.) Despite this and other admonitions that he was not allowed to leave early, Tobin continued to do so. (Id. at ¶¶ 72-75, 80.) On November 6, Serino sent Tobin a Notice of Allegations, charging him with insubordination for leaving early as well as other infractions. (Doc. No. 27 Ex. BB.) After a hearing on November 16, Defendants suspended Tobin. (Doc. No. 23-1 at 85, 87, 89.) Tobin was fired two weeks later, prompting the instant suit. (Id. at 57.)

### III. DISCUSSION

Defendants seek summary judgment on all ten of Tobin's claims: (1) discrimination in violation of the ADA; (2) retaliation in violation of the ADA; (3) violation of the FMLA; (4) retaliation in violation of the FMLA; (5) discrimination on the basis of gender, sexual orientation, and race in violation of Title VII; (6) retaliation in violation of Title VII; (7) discrimination in violation of the PHRA; (8) retaliation in violation of the PHRA; (9)

3

discrimination in violation of the PHRA; and (10) aiding and abetting discrimination in violation of state law.

    *A) ADA Discrimination (Count I)*

Tobin has shown a dispute of material fact as to whether Defendants failed to reasonably accommodate his disability as required by the ADA. To make out a prima facie case of failure to accommodate, Tobin must show that "(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." Capps v. Mondelez Glob., LLC, 847 F.3d 144, 157 (3d Cir. 2017). An accommodation is unreasonable if it imposes an undue burden on the employer. See Colwell v. Rite Aid Corp., 602 F.3d 495, 504 (3d Cir. 2010).

The Parties do not dispute that Tobin was disabled and that Defendants were aware of this. (Doc. No. 23-1 at ¶ 3.) Once again Tobin submitted a doctor's note stating that transferring him to the second shift could impair his mental health. (Doc. No. 25 Ex. L.) He requested an accommodation—not to work the later shift—but Defendants did not offer this or any other accommodation. (Doc. No. 19 Ex. A at 214-215.) Tobin has produced evidence that he could have been accommodated, as he was not replaced on the second shift, which remains unsupervised. (Doc. No. 23-1 at ¶ 45.) The Parties dispute whether Defendants made a good faith effort to accommodate Tobin's condition, and Tobin has produced evidence that Defendants failed to do so by refusing to offer any accommodations, including transferring Tobin back to the first shift. (See id. at ¶ 87; Doc. No. 26 Exs. P, Q.) Defendants have not shown that returning Tobin to the first shift would have imposed an undue burden, as Tobin has rebutted Defendants' claims that his work on the second shift was necessary due to COVID-19. (See Doc. No. 23-1 at ¶ 45 (no one currently supervises the second shift and Defendants gave no

4

reason the work could not be done during first shift).)  Because Tobin has thus shown a dispute of material fact, I will deny summary judgment on this Count.

        B)  *ADA Retaliation (Count II)*

Tobin has shown a dispute of material fact.  To make out retaliation, Tobin must show (1) that he engaged in a protected activity; (2) that Defendants took an adverse action against him; and (3) that there was a causal connection between the protected activity and the adverse action taken.  Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006).  With respect to causation, Tobin must show that a reasonable jury could link the employer's conduct to retaliatory animus.  Monaco v. Limestone Veterinary Hospital, 152 F. Supp. 3d 253 (D. Del. 2016).

Tobin engaged in a protected activity when he requested an accommodation.  Barber v. Subway, 131 F. Supp. 3d 321, 329 (M.D. Pa. 2015).  After refusing to accommodate Tobin and move him back to the first shift—despite being presented with a doctor's note—Defendants suspended and later terminated him.  (Doc. No. 26 Exs. Q, R.)  Defendants contend these decisions were the result of Tobin's insubordination and other infractions.  Because a reasonable jury could find that Defendants retaliated against Tobin, I will deny summary judgment on this Count.

        C)  *FMLA Violation (Count III)*

FMLA provides that if an employer requires employees to submit medical certification, the employee must be given at least 15 days to return the forms, with extra time allowed if "it is not practicable under the particular circumstances [to return the forms within this timeframe] despite the employee's diligent, good faith efforts."  29 C.F.R. § 825.305(b); Peter v. Lincoln Technical Inst., Inc., 255 F. Supp. 2d 417, 442 (E.D. Pa. 2002).  Good faith requires "at least that the employee contact his employer by telephone and make it aware that he is unable to return his

5

certification before the deadline." Peter, 255 F. Supp. 2d at 442.

Defendants sent Tobin an FMLA letter on October 2 with instructions to return the required forms by October 19. (Doc. No. 25, Ex. O.) Although Tobin testified at deposition that he had difficulty completing this paperwork, he provides no evidence (not even his own testimony) that he told his employer that he would not be able to return the certification before the deadline. (See Doc. No. 25 Ex. A at 296; Doc. No. 26 Ex. P at 66.) Rather, on October 30—more than ten days after the deadline had already passed and after he was informed that leaving halfway through his shifts was no longer approved—Tobin told Defendants that he was having difficulty with his forms.. (Doc. No. 26 Ex. X.) Because Tobin thus failed to make diligent, good faith efforts to provide required medical certification, I will grant summary judgment on this Count.

*D) FMLA Retaliation (Count IV)*

Tobin has not made out a dispute of material fact regarding this Count. To state a claim for FMLA retaliation, Tobin must show that (1) he took FMLA leave or invoked his right to FMLA leave, (2) he suffered an adverse employment action, and (3) there was a causal link between his leave or invocation and the adverse action. Phinizy v. Pharmacare, 569 F. Supp. 2d 512, PIN (W.D. Pa. 2008). On October 2, Defendants sent Tobin a letter apprising him of his FMLA rights and requesting a medical certification, but Tobin did not provide a medical certification by October 19 as required. (Doc. No. 25, Ex. O; Doc. No. 25 Ex. A at 296.) As I have discussed, Tobin did not inform Defendants that he was having trouble completing the paperwork until October 30. (Doc. No. 26 Ex. X.) Tobin testified to this difficulty at a disciplinary hearing on November 16, but never provided the medical certification. (Doc. No. 26 Ex. P at 66.) Although Tobin was terminated shortly after this hearing, he has provided no

6

evidence that his termination was related to his assertion of FMLA rights, especially given that he failed to make good faith efforts to provide the required documentation. Tobin has thus failed to show a causal link between his invocation of rights and any adverse employment action, and I will grant summary judgment on this Count.

    E) *Title VII Discrimination (Count V)*

To make out a prima facie case, Tobin must show (1) that he is a member of a protected class; (2) that he suffered some form of adverse employment action; and (3) that this action occurred in circumstances that might give rise to an inference of unlawful discrimination. <u>Jones v. School Dist. of Philadelphia</u>, 198 F.3d 403, 410 (3d Cir. 1999). Tobin has not even alleged that he is a member of a protected class. Rather, Tobin alleges only that he suffered discrimination after reporting Civera's racist comments, none of which were directed at Tobin. (Doc. No. 1 at ¶ 92.) This is insufficient. I will thus grant summary judgment on this Count.

    F) *Title VII Retaliation (Count VI)*

To make a claim of retaliation, Tobin must show that: (1) he engaged in a protected activity; (2) he was subject to adverse action from his employer after or contemporaneous with the protected activity; and (3) there is a causal connection between the protected activity and the adverse action. <u>Moore v. Secretary U.S. Dept. of Homeland Security</u>, 718 F. App'x 164, 166 (3d Cir. 2017). An adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Moore v. City of Phila.</u>, 461 F.3d 331, 341 (3d Cir. 2006).

The Parties do not dispute that Tobin engaged in a protected activity when he reported Civera or that Tobin was moved to the second shift. (Doc. No 23-1 at ¶ 9; Doc. No. 25 Ex. H.) Rather, Defendants urge that Tobin suffered no adverse employment action. Yet, a reasonable

worker might be dissuaded from reporting Civera's comments if faced with a transfer from a morning shift to an evening shift.  See Moore, 461 F.3d at 347 (transfer to same position in different district could be materially adverse); Mondzelewski v. Pathmark Stores, Inc., 162 F.3d 778, 788 (3d Cir. 1998) ("Assigning an employee to an undesirable schedule can be more than a 'trivial' or minor change in the employee's working conditions").  Although Defendants argue that the decision to move Tobin to second shift was driven by COVID-19, the record does not support this.  (Doc. No. 25 Ex. L, Ex. B at 106.)  Moreover, Civera personally recommended Tobin for the position only after Tobin reported him.  (Id.)  Because Tobin has thus shown a dispute of material fact as to whether he was moved to second shift as retaliation for his report, I will deny summary judgment.

      *G)  PHRA Discrimination and Retaliation (Counts VII, VIII, and IX)*

The PHRA shares "the same standard for determination of liability" as the ADA and Title VII.  McNelis v. Pa. Power & Light Co., 867 F.3d 411, 414 (3d Cir. 2017); Phillips v. Heydt, 197 F.Supp.2d 207, 216 (E.D.Pa. 2002).  I will deny summary judgment for Tobin's PHRA disability discrimination claim for the same reasons I denied summary judgment for his ADA discrimination claim.  See Section A, supra. I will grant summary judgment to the extent Tobin's PHRA claim includes an allegation of discrimination based on sexual orientation, race, and gender for the same reasons I granted summary judgment for his Title VII discrimination claims.  See Section E, supra.  I will deny summary judgment on the PHRA retaliation claims for the same reasons I denied it for the ADA and Title VII retaliation claims.  See Sections B, F, supra.

      *H)  Aiding and Abetting (Count X)*

Tobin has shown a dispute of material fact supporting his aiding and abetting claims. Under the PHRA, an individual supervisory employee may be held liable for his own direct acts

8

of discrimination or for his failure to take action to prevent further discrimination by a supervisee.  <u>Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren P.C.</u>, 20 F. Supp. 2d 885, 887 (E.D. Pa. 1998).  Tobin has produced evidence that each defendant directly participated in and/or failed to stop the alleged discrimination:  Civera directly discriminated against Tobin when he recommended him for the second shift despite being aware of his condition; Defendant Anthony Testa directly discriminated against Tobin when he approved the shift change and failed to prevent discriminatory behavior by inadequately supervising Civera; Serino discriminated directly against Tobin when he sent emails demanding additional unspecified paperwork instead of providing accommodations; and Defendant Daniel Nerelli discriminated directly against Tobin when he signed and sent the Statement of Charges that ultimately led to his termination.  (Doc. No. 25 Ex. A at 199-200, 409-413, Ex. B at 205-208, Ex. C, Ex. I at 51-59, Ex. M; Doc. No. 26 Ex. R.)  Defendants dispute these facts.  Tobin has nonetheless shown a dispute of material fact as to whether most of the individual Defendants aided and abetted the alleged discrimination, and I will deny summary judgment accordingly.  Tobin has not, however, shown a dispute of fact as to whether James Stewart participated in any of the alleged conduct, and has in fact confirmed that he should be dismissed (though the Parties have not moved for his dismissal).  (Doc. No. 24-1 at ¶ 131.)  As such I will grant summary judgment on this Count only as to Defendant Stewart.

### IV.     <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motions for Summary Judgment (Doc. Nos. 19, 20) are **GRANTED IN PART** as follows:

1. Defendants' Motions are **GRANTED** as to Counts III, IV, and V.

2. Defendants' Motions are **GRANTED** as to Counts VII, VIII, and IX only to the

extent Plaintiff alleges discrimination on the basis of his race, sexual orientation, and gender.

3. Defendants' Motions are **GRANTED** as to Count X only for Defendant Stewart.

4. Defendants' Motions are otherwise **DENIED**.

                                              **AND IT IS SO ORDERED.**

                                              */s/ Paul S. Diamond*

                                              Paul S. Diamond, J.